UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

AIRPORT PROPERTIES, INC.,  §
§
  Plaintiff,  §
§
v.  §  CIVIL ACTION NO. 1:26-cv-00260
§
CITY OF PUEBLO, COLORADO,  §
§
  Defendant.  §

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND REQUEST FOR INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff, Airport Properties, Inc. ("Plaintiff"), through its counsel, and files this, its Original Complaint and Request for Injunctive Relief against the City of Pueblo, Colorado ("Defendant"), and in support thereof would respectfully show this Court the following:

## I.
## PARTIES

1.1 Plaintiff is a foreign corporation, with its principal office located at 3303 McKamy Oaks Trail, Arlington, Texas 76017. At the time of the formation of the contract in question, Plaintiff's principal office was in Tarrant County, Texas.

1.2 Defendant is a municipal corporation, who may be served with process in accordance with FED. R. CIV. P. 4(j)(2), by delivering a copy of the summons and this Complaint to its chief executive officer, Mayor Heather Graham, or its city clerk, Maris Stoller, at: (1) 1 City Hall Place, Pueblo, Colorado 81003; or (2) wherever they may be found.

## II.
## JURISDICTION AND VENUE

2.1    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

2.2    This Court also has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this lawsuit arises under the Fifth and Fourteenth Amendments to the U.S. Constitution, and under federal statutory law, including 42 U.S.C. § 1983 and the Federal Declaratory Judgment Act.[1]

2.3    This Court has in personam jurisdiction over Defendant because it is a municipal corporation organized and existing pursuant to the laws of the State of Colorado.

2.4    Venue lies in this judicial district, pursuant to 28 U.S.C. § 1391, because it is the judicial district in which Defendant is located and in which a substantial part of the events or omissions giving rise to the claim(s) occurred.

## III.
## FACT ALLEGATIONS

3.1    This lawsuit concerns the lease of certain real property within the Pueblo Memorial Airport (the "Airport") by Defendant to Plaintiff.

**A.    The Ground Lease**

3.2    On or about February 26, 2002, Plaintiff entered into a lease agreement with Defendant, wherein Defendant agreed to lease certain real property within the Airport, located at 430 Skyway Street, Pueblo, Colorado 81001 and 449 Skyway Street, Pueblo, Colorado 81001 (collectively, the "Property") to Plaintiff for the purpose of Plaintiff constructing, occupying,

---

[1] 28 U.S.C. § 2201.

subleasing, and managing new hangars on the Property (the "Ground Lease").  A true and correct

copy of the Ground Lease is attached hereto and is fully incorporated herein by this specific

reference as Exhibit A.

3.3    The Ground Lease provides for an initial term of twenty (20) years, beginning on

January 1, 2002 and ending on December 31, 2021 (the "Initial Term").

3.4    The Ground Lease also granted Plaintiff with the right and option to extend the

Ground Lease for two ten-year periods beginning immediately after the expiration of the Initial

Term (the "Option").

3.5    On or about March 25, 2002, Plaintiff and Defendant entered into that certain

Amendment to Hangar Ground Lease, which amended the start and end dates of the Initial Term

to February 26, 2002, and February 25, 2022 (the "Amendment").

3.6    On or about February 18, 2003, Plaintiff exercised the Option.

3.7    Accordingly, the Ground Lease is set to terminate on February 25, 2042.

3.8    The Ground Lease states, in relevant part:

> Defendant reserves and retains for its officers, employees, and authorized representatives the right to enter the leased premises *during reasonable business hours, and after prior notice*, for the purpose of inspecting and protecting the leased premises, and of doing any and all things which [Defendant] may deem necessary for the proper general conduct and operation of the Pueblo Memorial Airport, and in the exercise of [Defendant's] police power.

*See* Exhibit A, ¶ 9 (emphasis added).

3.9    The Ground Lease further defines an "event of default" by Plaintiff as a:

> Failure of Lessee to perform or comply with any obligation, covenant or agreement of Lessee hereunder for a period of thirty (30) days after written notice *specifying such failure* is given by Lessee to Lessor, except that if such obligation, covenant or agreement is not capable of being performed within said thirty (30) day period, Lessee shall not be in default if Lessee shall commence such performance within said thirty (30) day period and thereafter prosecute the same with diligence and continuity to completion.

*See* <u>Exhibit A</u>, ¶ 18(A)(2) (emphasis added).

3.10    The Ground Lease further states that in "the case of a continuing event of default by [Plaintiff], [Defendant] shall have the following remedy . . . Terminate this Lease by sixty (60) days prior written notice given to [Plaintiff] specifying the date of termination and [Defendant] shall within said 60-day period vacate the leased premises and surrender possession thereof to Lessor."  *See* <u>Exhibit A</u>, ¶ 18(B)(1).

3.11    The Ground Lease also provides that "[a]ll notices required to be given to Lessee hereunder shall be in writing and sent by certified mail, addressed to Airport Properties, Inc. @ 3303 McKamy Oaks Trail Arlington, Texas 76017."  *See* <u>Exhibit A</u>, ¶ 19.

**B.    Defective and Erroneous Notice of Default**

3.12    In reliance on the terms and conditions of the Ground Lease, Plaintiff constructed two multi-unit aircraft hangar buildings at the Property, which combine for 32,830 square feet of rentable space (collectively, the "<u>Hangars</u>").

3.13    The Hangars are subdivided into approximately 19 separate spaces for possession, use, and enjoyment by multiple subtenants simultaneously.

3.14    On Monday, November 11, 2024 (a federal holiday), Defendant arranged for an inspection of the Property and/or the Hangars by three different third-party vendors.

3.15    Contrary to industry standards and/or Paragraph 19 of the Ground Lease, Defendant first gave Plaintiff notice of this inspection by e-mail correspondence on November 6, 2024, less than 5 calendar days prior to the inspection.

3.16    Approximately eight (8) days later, on November 19, 2024, Defendant sent Plaintiff a letter, with 150 pages of inspection reports enclosed, which purported to give Plaintiff a "notice of default pursuant to Section 18" of the Ground Lease (the "<u>Notice of Default</u>").  A true and

correct copy of the Notice of Default is attached hereto and is fully incorporated herein by this specific reference as Exhibit B.

3.17    Notably, the Notice of Default was misaddressed to ZIP code 76107 rather than 76017, rendering the purported notice inconsistent with the express notice provisions of the Ground Lease.  *See* Exhibit B, p.1.  The Notice of Default also demanded that Plaintiff cure the "defaults" described therein within thirty (30) days or Defendant "may terminate the Lease."  *See* Exhibit B, p.2.  However, the Notice of Default was erroneous and improper for multiple reasons.

3.18    To illustrate, the Notice of Default alleges that Plaintiff "failed to perform or comply with the following terms and conditions" of the Ground Lease:

1.    Section 4.G. Maintain original state, Lessee shall obtain City approval for additional modifications to the hangar or leased premises.

2.    Section 5. Maintenance Obligations, failure to maintain the Leased Premises in a safe, sanitary, orderly, and sightly condition.

3.    Section 16.(A). Approval of leases by the City, sub-leases must be approved by the City.

4.    Section 16.(B) Lessee shall include mandatory provisions in all of the subleases.

5.    Section 16(B)(2) Insurance, Lessee shall provide the City with proof of Sublease's insurance."

*See* Exhibit B, pp.1-2.

3.19    As an initial matter, the Notice of Default failed to comply with Paragraph 18(A)(2) of the Ground Lease because the Notice of Default merely alleged, in conclusory terms, that Plaintiff breached the identified provisions of the Ground Lease, without specifying how Plaintiff failed to perform or comply with such terms.

3.20    Regarding the first item, Defendant applied and/or interpreted Paragraph 4(G) of the Ground Lease in bad faith, as the alleged default of this term is the lack of Defendant's own approval for certain, unidentified improvements, which "shall not be unreasonably or arbitrarily denied or withheld."

3.21    Regarding the second item, the Notice of Default generally references "unrepaired hail and storm damage to the exterior of the buildings electrical and plumbing concerns, and interior water damage."  However, the Notice of Default and/or the enclosed reports wholly fail to specify where in the Hangars (32,830 square feet of space) that the alleged deficiencies could be found, or identify the specific corrective actions that Defendant expected Plaintiff to take to "comply" with Paragraph 5 of the Ground Lease.

3.22    Regarding the third item, Defendant blatantly misrepresents the text of Paragraph 16(A) of the Ground Lease, as this provision does not apply to sub-leases, and no other term of the Ground Lease requires that sub-leases be approved by Defendant.

3.23    Regarding the fourth item, the Notice of Default once again fails to identify or describe how Plaintiff failed to comply with Paragraph 16(B) of the Ground Lease and/or what specific "mandatory provisions" were missing from which specific subleases.

3.24    Regarding the fifth item, the Notice of Default once again blatantly misrepresents Plaintiff's obligations under the Ground Lease, in bad faith, as Paragraph 16(B)(2) expressly states that a subtenant's insurance requirement "may be complied with by Subtenant's coverage under [Plaintiff's] Ground liability insurance policy."  While Defendant had already been provided with proof of Plaintiff's own liability insurance policy, which meets the above requirement, Defendant nonetheless alleged that Plaintiff violated the insurance requirement by failing to provide proof of unspecified subtenants' insurance policy.

3.25    Finally, and perhaps most importantly, the Notice of Default erroneously states that Defendant "may terminate the Lease unless you cure the violations within thirty (30) days," when Defendant has no such right to terminate the Ground Lease for ordinary defaults.

3.26    As stated above, Paragraph 18(B) states that Defendant may terminate the Ground Lease by sixty (60) days' prior written notice, but only for "a continuing event of default."

3.27    Defendant has no right to terminate the Ground Lease for an "event of default," which is defined as either:

(a)    "Failure of Lessee to pay in full all delinquent installments of rent and/or combined service fees *for a period of thirty (30) days after written notice and demand therefore are given by Lessor to Lessee*;" or

(b)    "Failure of Lessee to perform or comply with any obligation, covenantor agreement of Lessee hereunder *for a period of thirty (30) days after written notice specifying such failure is given by Lessee to Lessor*, except that if such obligation, covenant or agreement is not capable of being performed within said thirty (30) day period, Lessee shall not be in default if Lessee shall commence such performance within said thirty (30) day period and thereafter prosecute the same with diligence and continuity to completion."

See Exhibit A, ¶ 18 (emphasis added).

3.28    Therefore, a failure to comply with Defendant's demands within thirty (30) days could not trigger Defendant's right to terminate the Ground Lease, but the Notice of Default erroneously threatened Plaintiff with termination nonetheless.

**C.    Plaintiff's Attempts to Comply with the Notice of Default and Defendant's Silence**

3.29    Given these issues, Plaintiff requested clarification from Defendant regarding the Notice of Default, on numerous occasions, to no avail.

3.30    Instead, Defendant only granted Plaintiff an extension of its deadline to December 31, 2024 for production of certain documents and February 29, 2025 for completion of unspecified "repairs."

3.31    During this time, Plaintiff took several steps to comply with the Notice of Default, including: (a) notifying its insurance company; (b) arranging for its own inspection of the Hangars and/or the Property; (c) arranging for repair work to be done to address the items identified by the inspection reports attached to the Notice of Default; (d) continuing attempts to communicate with Defendant to obtain clarification as to what specific repair or remedy Defendant deemed necessary for compliance with the Ground Lease; and (e) providing the requested documents to Defendant.

3.32    On or about February 28, 2025, Plaintiff sent a letter to Defendant, which described the steps taken by Plaintiff to attempt to comply with the items listed in the Notice of Default (the "Notice of Compliance").  A true and correct copy of the Notice of Compliance is attached hereto and fully incorporated herein by this specific reference as Exhibit C.

3.33    Plaintiff, once again, requested clarification from Defendant regarding the specific acts or omissions that Defendant alleged amounted to violation(s) of the Ground Lease.

3.34    Rather than communicate and collaborate with Plaintiff in good faith, Defendant only confirmed its receipt of the Notice of Compliance but offered no response or related communication for over 300 days (February 28, 2025 to January 2, 2026).

**D.    Defendant's Notice of Termination**

3.35    Defendant's silence appears to have been calculated and deliberate, as Defendant proceeded to send Plaintiff a notice of termination letter, dated January 2, 2026, wherein Defendant "declared" Plaintiff to be in "continued default" of the Ground Lease and gave Plaintiff notice that the Ground Lease will terminate on March 3, 2026 (the "Notice of Termination").  A true and correct copy of the Notice of Termination is attached hereto and fully incorporated herein by this specific reference as Exhibit D.

3.36     The Notice of Termination is defective and violates the terms of the Ground Lease for the reasons described below.

3.37     As an initial matter, the Notice of Termination reiterates Defendant's erroneous interpretation and/or application of Paragraph 18, as entitling Defendant to terminate the Ground Lease for a failure to comply with the Notice of Default alone.  *See* <u>Exhibit D</u>, p.1.  In this regard, the Notice of Termination continues to state that Plaintiff "has been on notice of those defaults" for approximately one year."  *See* <u>Exhibit D</u>, p.2.  However, as stated above, the Notice of Default could only serve to notify Plaintiff of ***potential*** defaults, which would then become "events of default" if not cured by the applicable deadline.

3.38     Based on the process described in Paragraph 18 of the Ground Lease, to date, Plaintiff has not been notified of the existence of any "events of default" because Defendant chose to remain silent and failed to inform Plaintiff that its attempts at compliance with the Notice of Default were insufficient.

3.39     Any argument by Defendant that the acts and/or omissions described in the Notice of Termination are consistent with those described in the Notice of Default is immaterial because under the terms of the Ground Lease, the Notice of Termination could only serve as a notice of "events of default," at best.  Therefore, the acts or omissions identified in the Notice of Termination were not yet "continuing events of default," and Defendant had no right under Paragraph 18 to "terminate" the Ground Lease.

3.40     Furthermore, the Notice of Termination also provides Plaintiff with notice of ***new alleged failures to comply with other terms*** of the Ground Lease, which were not previously identified in the Notice of Default, including: (a) "new state of good repair issues" allegedly in violation of Paragraph 5; (b) alleged violations of Paragraph 4(C), which were not identified in the

Notice of Default; (c) new alleged violations of Paragraph 16, which were not identified in the Notice of Default; and (d) violations of the Pueblo Code of Ordinances, which were also not identified in the Notice of Default.

3.41    Therefore, under the terms of the Ground Lease, the Notice of Termination also should have provided Plaintiff with an additional thirty (30) days to cure the alleged violations and avoid an event of default on those new grounds.

3.42    Defendant agreed to follow a specific process for early termination of the Ground Lease, and Defendant did not do so in this case.  Instead, Defendant chose to ignore Plaintiff's repeated requests for good faith collaboration and *stay silent for over 300 days* for the sole purpose of establishing grounds for terminating Plaintiff's leasehold interest in the Property, without any meaningful opportunity to be heard, whatsoever.

3.43    In addition to the Notice of Termination, Defendant has also begun soliciting Plaintiff's subtenants and/or informing them that their own subleases with Plaintiff have been terminated and that they must sign new leases with Defendant to remain at the Hangars on the Property.  In this regard, Defendant has invited Plaintiff's subtenants to a meeting on January 29, 2026 to discuss the "options" going forward.  Based on these events, it is Plaintiff's belief that Defendant is actively marketing the Hangars on the Property to third-parties, with the intent to enter into lease agreements with them as soon as possible.

3.44    As stated above, at the time of the events in question, Plaintiff had approximately 17 subtenants in the Hangars at the Property, all of whom have already paid Plaintiff substantial amounts of money to sub-lease, possess, and enjoy their respective spaces in the Hangars through the end of their respective sublease terms.  Therefore, any improper deprivation or termination of Plaintiff's property interests would simultaneously serve to improperly take or deprive Plaintiff's

subtenants of their respective property rights.

3.45    Based on the foregoing, it is apparent that rather than work with Plaintiff in good faith to address the alleged deficiencies and/or defaults under the Ground Lease, Defendant has elected to work in secret to terminate the Ground Lease and deprive Plaintiff and its subtenants of their property rights without notice, hearing, or other due process of law.

3.46    As further evidence of Defendant's bad faith, it is apparent Defendant hired the law firm Kaplan Kirsch, LLP, without notice or hearing, in connection with its improper attempt to terminate the Ground Lease.

3.47    To date, the specific matter for which Defendant hired Kaplan Kirsch, LLP has not been disclosed to the public, as the matter was redacted from the applicable city council resolution that purportedly authorized such hiring.

3.48    However, it is clear that Kaplan Kirsch, LLP was hired for purposes of improperly terminating the Ground Lease because the firm is disclosed in the recent correspondence to Plaintiff and its subtenants.

3.49    As a result of Defendant's conduct, an actual and immediate controversy exists regarding the legality of Defendant's actions, the continuing enforceability of the Ground Lease, and/or the improper deprivation or termination of Plaintiff's leasehold interests in the Property.

3.50    Defendant's actions threaten immediate disruption of ongoing aviation operations at the Airport, which is subject to federal regulatory oversight, and without judicial intervention, Plaintiff faces imminent and irreparable harm to its property interests in the Hangars and the Property, as well as the property interest and business operations of Plaintiff's subtenants in the Hangars arising from subleases under the Ground Lease.

# IV.
# CAUSES OF ACTION

4.1    ***Alternative Pleadings***. To the extent necessary, each of the claims set forth below is pleaded in the alternative.

**A.    Claim One:**

### Breach of Contract

4.2    To the extent necessary, Paragraphs 1.1 through 4.1 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.3    As set forth above, Defendant breached the Ground Lease by failing and/or refusing to abide by and/or comply with the terms thereof, including but not limited to Paragraphs 4C, 4F, 4G, 5, 9, 16A, 16B, 18, and/or 19.

4.4    Additionally and/or alternatively, as set forth above, Defendant breached its implied duty of good faith and fair dealing in its interpretation, application, and/or performance of the terms of the Ground Lease, including but not limited to Paragraphs 4C, 4F, 4G, 5, 9, 16A, 16B, 18, and/or 19, thereby breaching the Ground Lease.

4.5    As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded under law and/or in equity, including but not limited to equitable relief, injunctive relief, and damages, in an amount to be proven and/or determined at the time of trial, as well as attorneys' fees and costs.

**B.    Claim Two:**

### Violations of the United States Constitution, Fifth and Fourteenth Amendments, and the Colorado Constitution, Article II, § 25: Procedural and Substantive Due Process

4.6    To the extent necessary, Paragraphs 1.1 through 4.5 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.7     As set forth above, Defendant's actions constitute violations of the Fifth and Fourteenth Amendments of the U.S. Constitution, actionable through 42 U.S.C. § 1983, as Defendant's conduct deprives Plaintiff of its rights, privileges, and/or immunities secured under the U. S. Constitution.  Defendant is a "state actor" within the meaning of the U. S. Constitution, and the actions complained of herein comprise "state action."

4.8     Defendant deprived Plaintiff of its right to procedural and substantive due process, as secured by the Fifth and Fourteenth Amendments to the U. S. Constitution.  Additionally or alternatively, Defendant deprived Plaintiff of its right to procedural and substantive due process, as secured by Article II, Section 25, of the Colorado Constitution.

4.9     Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of its protected property interest in the Hangars and the Property subject to the Ground Lease, without due process and/or due course of law.

4.10    Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by diminishing Plaintiff's protected property interest in the Hangars and the Property subject to the Ground Lease, without due process and/or due course of law.

4.11    Plaintiff is entitled to a hearing and a meaningful opportunity for redress of its claims; however, Defendant has failed and/or refused to provide Plaintiff with the minimal procedural due process and/or the procedures set forth in the Ground Lease for notice and opportunity to cure violations thereof, before termination, effectively denying Plaintiff due process rights to which Plaintiff was entitled, thus violating its right to procedural due process guaranteed by the Fifth and Fourteenth Amendments to the U. S. Constitution and/or Article II, Section 25, of the Colorado Constitution.

4.12    Moreover, Plaintiff also possesses a claim against Defendant for violation of substantive due process for Defendant's arbitrary, capricious, unreasonable, and/or irrational actions taken against it.  Additionally or alternatively, Plaintiff has been deprived of its protected and fundamental rights, without due process of laws, in an arbitrary, capricious, unreasonable, and/or irrational manner.

4.13    As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded under law and/or in equity, including but not limited to equitable relief, injunctive relief, and damages, in an amount to be proven and/or determined at the time of trial, as well as attorneys' fees and costs.

**D.    Claim Three:**

**Federal Declaratory Judgment Act**

4.14    To the extent necessary, Paragraphs 1.1 through 4.13 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.15    As set forth above, Plaintiff and Defendant entered into the Ground Lease, which created a property interest in the Hangars, the Property, and the obligations, covenants, and/or procedures by which the parties agreed to be bound.

4.16    Also, as set forth above, Defendant breached the Ground Lease through its improper termination of the Ground Lease and/or its failure to provide the requisite pre-inspection and/or pre-default notices and opportunity to cure potential defaults.

4.17    As a result of Defendant's conduct, an actual and immediate controversy exists regarding the legality of Defendant's actions, the continuing enforceability of the Ground Lease, and/or the improper deprivation or termination of Plaintiff's leasehold interests in the Property.

4.18    Therefore, pursuant to FED. R. CIV. P. 57 and/or 28 U.S.C. §§ 2201 and 2202,

Plaintiff seeks judgment declaring that:

(a)    Defendant improperly deprived Plaintiff of its protected property rights and/or leasehold interests in the Hangars and the Property, in violation of the Fifth and/or Fourteenth Amendments of the U.S. Constitution;

(b)    Defendant improperly deprived Plaintiff of its protected property rights and/or leasehold interests in the Hangars and the Property, in violation of Article II, § 25, of the Colorado Constitution;

(c)    Defendant improperly deprived Plaintiff of its protected property rights created by the obligations, covenants, and/or procedures in the Ground Lease, in violation of the Fifth and/or Fourteenth Amendments of the U.S. Constitution;

(d)    Defendant improperly deprived Plaintiff of its protected property rights created by the obligations, covenants, and/or procedures in the Ground Lease, in violation of Article II, § 25, of the Colorado Constitution;

(e)    Defendant breached the Ground Lease through its failure to give the proper notice under Paragraph 9, prior to conducting inspections at the Property;

(f)    Defendant breached the Ground Lease through its failure to conduct inspections at the Property during reasonable business hours or as otherwise required by Paragraph 9;

(g)    Defendant breached the Ground Lease through its failure to give the proper notice of potential events of default under Paragraph 18;

(h)    Defendant breached the Ground Lease through its failure to give the proper notice of events of default under Paragraph 18;

(i)    Defendant breached the Ground Lease through its failure to give the proper notice of continuing events of default under Paragraph 18;

(j)    Defendant breached the Ground Lease through its purported termination of the Ground Lease, when no continuing event of default by Plaintiff exists under Paragraph 18;

(k)    as of the date of the judgment, no event of default by Plaintiff exists under Paragraph 18 of the Ground Lease;

(l)    as of the date of the judgment, no continuing event of default by Plaintiff exists under Paragraph 18 of the Ground Lease; and

(m)    the Ground Lease remains in full force and effect.

**V.**
**REQUESTED RELIEF**

5.1    To the extent necessary, Paragraphs 1.1 through 4.18 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.2    As to Plaintiff's claims for breach of contract, Plaintiff sues Defendant pursuant to Colorado law, and Plaintiff hereby seeks to recover any and all remedies afforded under law and/or in equity, including but not limited to equitable relief (such as specific performance), injunctive relief, damages (such as those damages arising from Plaintiff's subleases under the Ground Lease and/or from any deficiencies with the Notice of Default and/or the Notice of Termination), and special damages (such as those attorneys' fees or other foreseeable damages arising from Defendant's breach of the Ground Lease), in an amount to be proven and/or determined at the time of trial, as well as attorneys' fees and costs.

5.3    As to Plaintiff's claims for violations of the Fifth and Fourteenth Amendments to the U. S. Constitution, actionable through 42 U.S.C. § 1983, Defendant's conduct was under color of law, and Plaintiff hereby seeks to recover any and all remedies afforded under law and/or in equity, including but not limited to equitable relief (such as specific performance), injunctive relief (set forth in Section VI below), and damages (such as those damages arising from Plaintiff's subleases under the Ground Lease and/or from any deficiencies with the Notice of Default and/or the Notice of Termination), in an amount to be proven and/or determined at the time of trial, as well as attorneys' fees and costs.

5.4    As to Plaintiff's claims for violations of Article II, Section 25, of the Colorado Constitution, Plaintiff hereby seeks to recover any and all remedies afforded under law and/or in equity, including but not limited to equitable relief (such as specific performance), injunctive relief

(set forth in Section VI below), and damages (such as those damages arising from Plaintiff's subleases under the Ground Lease and/or from any deficiencies with the Notice of Default and/or the Notice of Termination), in an amount to be proven and/or determined at the time of trial, as well as attorneys' fees and costs.

5.5     As to Plaintiff's claims under the Federal Declaratory Judgment Act, pursuant to FED. R. CIV. P. 57 and/or 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks judgment for the declarations set forth in Paragraph 4.18 above.

## VI.
## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS

6.1     To the extent necessary, Paragraphs 1.1 through 5.5 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

6.2     "In order to receive a preliminary injunction, the plaintiff must establish the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

6.3     As stated in Section III above, it is probable that Plaintiff will recover from Defendant, after a trial on the merits, because Defendant: (a) committed acts constituting breach of the Ground Lease; (b) failed to comply with the notice requirements and procedures set forth in Paragraph 18 of the Ground Lease; (c) breached its duty of good faith and fair dealing, which it owed to Plaintiff in connection with the Ground Lease; and/or (d) violated Plaintiff's rights to procedural and substantive due process, as guaranteed by the U.S. Constitution and/or the Colorado Constitution.

6.4    Plaintiff will likely suffer imminent and irreparable injury if Defendant is not immediately enjoined and restrained, as requested in Paragraph 6.8 below, through a temporary restraining order.  *See* Fed. R. Civ. P. 65(b)(1); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019) ("What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. . . . Any deprivation of any constitutional right fits that bill.").

6.5    Specifically, if Defendant is not enjoined and restrained, as requested, it is probable that Plaintiff will suffer imminent and irreparable injury or harm because:

(a)    Defendant will and intends to deprive Plaintiff of its property interests in the Hangars and the Property, without due process of law, as guaranteed by the U.S. Constitution and the Colorado Constitution;

(b)    The Ground Lease does not provide for termination, as Defendant is attempting to exercise, and Plaintiff's lease term under the Ground Lease does not end until February 25, 2042;

(c)    Plaintiff's 17 subtenants have already pre-paid for their use of the Hangars on the Property, in accordance with their respective subleases with Plaintiff;

(d)    Defendant issued the Notice of Termination on January 2, 2026 and intends to improperly remove Plaintiff (and its subtenants) from the Hangars and the Property by March 2, 2026;

(e)    Defendant sent correspondence to Plaintiff's subtenants in attempt to convince them that the Ground Lease has terminated and that they must negotiate with Defendant to remain in the Hangars on the Property;

(f)    Defendant has scheduled a meeting with Plaintiff's subtenants, which is scheduled for Thursday, January 29, 2026, for the express purpose of convincing them that the Ground Lease has terminated and that they must negotiate with Defendant to remain in the Hangars on the Property;

(g)    Defendant's conduct will result in Plaintiff's subtenants entering into leases with Defendant to continue use of the Hangars on the Property when such agreements are unnecessary and will result in irreparable harm in violation of Plaintiff's property interests in the Hangars and the Property;

(h)     Defendant's conduct will result in Plaintiff's subtenants taking legal action against Plaintiff resulting in irreparable harm in violation of Plaintiff's property interests in the Hangars and the Property; and

(i)     Defendant's conduct will result in irreparable harm to Plaintiff's reputation and goodwill among its subtenants and at the Airport.

6.6     The threatened harm to Plaintiff outweighs the harm that a temporary restraining order would inflict on Defendant.  *See Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *see also Haggard v. Spine*, 2009 WL 1655030, *15 (D. Colo. June 12, 2009) ("This factor is simply a comparison between the injury [Plaintiff] would suffer should no [temporary restraining order] enter, . . . versus the injury [Defendant] would suffer if the [temporary restraining order] does enter.").

6.7     Also, issuance of a temporary restraining order would not adversely affect the public interest or public policy because the relief requested in Paragraph 6.8 below serves to protect and preserve the status quo during the pendency of this litigation, thereby preventing additional liabilities arising from Defendant's attempt to improperly remove Plaintiff from the Hangars and the Property and then renegotiate subleases with Plaintiff's 17 subtenants when they already have a legal right to use the Hangars.

6.8     Furthermore, the requested injunctive relief would promote stability and certainty for the Airport's operations and the relationships between Plaintiff, Plaintiff's subtenants, and Defendant during the pendency of this lawsuit.  *See Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 873–4 (D. Colo. 2014) ("[E]ntry of a preliminary injunction would serve the public interest by enforcing valid contractual provisions freely entered into by the parties, by promoting stability and certainty in business relationships. . . ."); *see also Baker Hughes Oilfield Operations, Inc. v. Beard*, 2016 WL 471390 at * 2 (D. Colo. Feb. 8, 2016) (recognizing a "strong public interest in enforcing contracts to promote stability and certainty in business relationships").

6.9    Plaintiff asks the Court to set its request for preliminary injunction for hearing at the earliest possible time, and after hearing the request, to issue a preliminary injunction that enjoins and restrains Defendant, during the pendency of this proceeding, from directly or indirectly:

(a)    terminating the Ground Lease;

(b)    removing Plaintiff from the Hangars or the Property;

(c)    terminating any lease or sub-lease agreements between Plaintiff and its sub-lessees;

(d)    removing any of Plaintiff's sub-lessees from the Hangars or the Property;

(e)    implying that the Ground Lease has been terminated, which includes:

1.    marketing or advertising the Hangars or the Property for lease;

2.    communicating to third parties, including but not limited to Plaintiff's subtenants, that the Hangars or the Property are/is available for lease;

3.    communicating to third parties, including but not limited to Plaintiff's subtenants, that Plaintiff is in default of the Ground Lease; or

4.    communicating to third parties, including but not limited to Plaintiff's subtenants, that the Ground Lease has been terminated;

(f)    engaging in any further conduct that may constitute a breach of the Ground Lease; and

(g)    altering, concealing, or disposing of any documents (in hard or electronic form) or other tangible evidence relating to any inspections, the Ground Lease, the Notice of Default, the Notice of Compliance, or the Notice of Termination.

6.10    Plaintiff is willing to post a bond in the amount the Court deems appropriate and/or continue the bond set by the Court for the temporary restraining order.

6.11    Also, after a final trial on the merits has been held, Plaintiff requests this Court to enter a permanent injunction to permanently enjoin and restrain Defendant from taking any actions

that Defendant is prohibited from taking under the temporary injunction, as set forth in Paragraph 6.8 above.

## VII.
## FEES, COSTS, AND INTEREST

7.1    Plaintiff has retained The Michael Kim Law Firm, PLLC to represent it in connection with this matter, and has agreed to pay for such reasonable and necessary services.

7.2    In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover its reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 42 U.S.C. §§ 1983, 1988(b).

7.3    Also, pursuant to 42 U.S.C. § 1988(c), Plaintiff seeks to recover any and all expert fees, which it incurs and/or may incur in bringing this suit.

7.4    Additionally, Plaintiff seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and against Defendant, as follows:

(a)    equitable relief;

(b)    injunctive relief;

(c)    damages in an amount to be proven and/or determined at the time of trial;

(d)    declaratory relief;

(e)    reasonable and necessary attorneys' fees;

(f)    expert witness fees;

(g)    costs of court;

(h)    pre-judgment and post-judgment interest;

(i)    such other and further relief, as this Court deems just and proper.

Respectfully submitted,


By: /s/ *Michael Y. Kim*
Michael Y. Kim, #53637
Ericha R. Brown, #56122
The Michael Kim Law Firm, PLLC
d/b/a MKim Legal
250 Fillmore Street, Suite 150
Denver, Colorado 80206
(720) 619-9311
(214) 357-7531 Facsimile
mkim@mkimlegal.com
erbrown@mkimlegal.com

ATTORNEYS FOR PLAINTIFF